*E-FILED - 8/7/09*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD PAYTON, | No. C 06-3649 RMW (PR) |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| DR. SADEGHI, et al., | |
| Defendants. | (Docket Nos. 30, 38) |

On May 11, 2007, plaintiff, a California prisoner proceeding *pro se*, filed an amended civil rights complaint pursuant to 42 U.S.C. § 1983. On September 10, 2008, defendants Novato Community Hospital and Director of Novato Community Hospital (the "Novato Defendants") moved for summary judgment as to all claims against them. In response to their motion, plaintiff filed a document titled "Opposition to Motion for Summary Judgment on Behalf of Defendants Novato Community Hospital and The Director of Novato Community Hospital," which the court construed as a Rule 56(f) motion. The court denied plaintiff's Rule 56(f) motion and granted plaintiff a *sua sponte* extension of time to file an opposition to the motion for summary judgment. To date, plaintiff has not filed an opposition or notice of non-opposition to the motion, nor has he sought an extension of time to do so. The Novato Defendants filed a reply in support of

1  their motion. In addition, on January 23, 2009, defendants James E. Tilton, Robert Ayers,
2  J. Sadeghi, M.D. and N. Grannis (the "Tilton Defendants ") filed a motion for summary
3  judgment as to all claims against them. Again, plaintiff has not filed an opposition or
4  notice of non-opposition to the motion, nor has he sought an extension of time to do so.

5  Having carefully considered the papers submitted, the court hereby GRANTS the
6  Novato Defendants' motion for summary judgment and the Tilton Defendants' motion for
7  summary judgment, for the reasons set out below.

## BACKGROUND

Plaintiff is a seventy-year-old inmate housed in San Quentin State Prison.[1] (Am. Compl. at 3.) He was diagnosed with glaucoma in 1981. At San Quentin, he has been treated by Dr. Sadeghi, who is an ophthalmologist. (*Id*.; Declaration of Dr. J. Sadeghi in Support of Motion for Summary Judgment by the Tilton Defendants ("Sadeghi Decl."), ¶ 3.) In April 2005, Dr. Sadeghi performed a cataract surgery on plaintiff's right eye without complications. (Sadeghi Decl., ¶ 6.)

On September 20, 2005, Dr. Sadeghi performed a cataract surgery on plaintiff's left eye and had an implant (an intraocular lens) placed in that eye. (*Id*.) Prior to the surgery, Dr. Sadeghi explained the risks it involved, including the risk of infection and decreased vision. The surgery was performed at Novato Community Hospital, and the records indicate that it went well. (*Id*., ¶ 7; Declaration of Larry Thornton in Support of Motion for Summary Judgment by the Novato Defendants ("Thornton Decl."), Ex. A at 28.) Following the surgery, Dr. Sadeghi explained the post-operative care for plaintiff and prescribed eye drops. (Sadeghi Decl., ¶ 7.) Plaintiff asked Dr. Sadeghi to give him something to cover his left eye, but Dr. Sadeghi stated that it was not necessary. (Declaration of Edward Payton in Support of Complaint for Damages ("Payton Decl."), Docket No. 6, ¶ 5.)[2]

---

[1] The facts stated herein are undisputed unless otherwise noted.

[2] Plaintiff did not file briefs or declarations in opposition to defendants' motions for summary judgment. However, he filed a declaration along with his amended complaint. The court will

1    On October 4, 2005, plaintiff experienced sharp pain, loss of vision, tearing, and redness in his left eye.  He was transported to the emergency department at Novato Community Hospital, and examined by Dr. Prescott, the emergency department physician.  (Thornton Decl., Ex. A at 58-59.)  He was diagnosed with acute glaucoma and corneal edema.  (*Id*.)  Dr. Prescott's notes also indicated "possible movement of lens implant."  (*Id*. at 53.)  Dr. Prescott had a difficulty assessing whether plaintiff had displacement of the lens, because she was "unable to see the entire lens secondary to elevated intraocular pressure."  (*Id*. at 58.)  In light of plaintiff's significant history of eye problems, Dr. Prescott contacted Dr. Sadeghi for consultation.  Dr. Sadeghi came to the emergency department, examined plaintiff and agreed with the diagnosis and prescribed medication.  Plaintiff received medication and was scheduled for a follow-up appointment with Dr. Sadeghi at San Quentin the following day.  (*Id*.)

Dr. Sadeghi saw plaintiff again on October 5.  He suspected that plaintiff developed endophthalmitis, an infection of the eye that is one of the risks of cataract surgery, and referred him to the West Coast Retina Medical Group for further evaluation.  (Sadeghi Decl., ¶ 9.)  Plaintiff was seen by Dr. Mitchell Goff of the West Coast Retina Medical Group the same day.  Dr. Goff diagnosed postcataract endophtalmitis in the left eye, and performed an intravitreal injection of antibiotics.  (*Id*., Ex. C at 1223, 1294.)  On October 15, plaintiff was seen by Dr. Alexander Bui of the West Coast Retina Medical Group.  An ultrasound test of the left eye was performed.  (*Id*. at 1206.)  Dr. Bui again diagnosed endophthalmitis.  (*Id*. at 1294.)   On October 20, Dr. Sadeghi performed a YAG laser cutting of the pupillary block of the left eye in order to reduce intraocular pressure.  That procedure appears to have been unsuccessful.  (*Id*., ¶ 11; Ex. C at 1291.) On November 21, plaintiff was evaluated by Dr. Arthur Fu of the West Coast Retina

---

use this declaration as an opposing affidavit under Federal Rule of Civil Procedure 56 to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (a verified complaint may be used as an opposing affidavit under Rule 56, if it is based on personal knowledge and sets forth specific facts admissible in evidence).

1   Medical Group who noted that the endophthalmitis infection had been resolved.  (*Id*., ¶ 12
2   & Ex. C at 1288.)
3       Because plaintiff continued to suffer from reduced vision due to residual vitreous
4   debris and advanced glaucoma, on January 11, 2006, Dr. Fu performed a vitrectomy
5   (removal of the vitreous debris) and membranectomy to improve plaintiff's vision in the
6   left eye.  (*Id*., ¶ 13 & Ex. B.)  On March 14, 2007, Dr. Alvarado of the University of
7   California at San Francisco ("UCSF") Medical Center performed Endoscopic
8   CylcoPhotocoagualation to treat continued intraocular pressure associated with plaintiff's
9   glaucoma.  (*Id*., ¶ 14 & Ex. E at 84-85.)
10      According to defendants, subsequent to this surgery, plaintiff's intraocular lens in
11  the left eye was dislocated.  (*Id*., ¶ 15.)  However, defendants' statement is not entirely
12  supported by the medical records.  On March 24, 2007, Dr. Stewart of the UCSF Medical
13  Center performed a second vitrectomy[3] along with membrane peeling and suture fixation
14  of the intraocular lens to the iris of the left eye.  According to Dr. Stewart's report, during
15  this surgery, "[i]t was determined that the patient had previously undergone vitrectomy.
16  There was some remaining vitreous at the vitreous base inferiorly which was entrapping
17  the intraocular lens that was dislocated.  The vitreous was trimmed down with the cutter.
18  The intraocular lens was freed up and noted to fall gently onto the retina.  The vitreous
19  base was also trimmed superiorly."  (*Id*., Ex. E at 37.)  This statement, on which
20  defendants rely to claim that the lens was dislocated following the March 14, 2007
21  procedure performed by Dr. Alvarado, is ambiguous as to the cause of the dislocation of
22  the lens.
23      According to plaintiff, the UCSF Medical Center doctors informed him that his
24  "eye pain and other eye problems were coming from a lense [sic] that had not been
25  properly attached during the operation done by Dr. Sadeghi [on September 20, 2005] and
26  had come lose [sic] and moved to the back of my eye."  (Payton Decl., ¶ 7.)  Plaintiff
27
28
        [3] As noted above, the first one was performed by Dr. Fu on January 11, 2006.

claims that it had taken San Quentin officials until the vitrectomy performed in April 2007 to provide plaintiff with the necessary treatment following the "improperly performed" September 20, 2005 surgery. (*Id*., ¶¶ 4, 7.)

Between September 20, 2005 and May 11, 2007, plaintiff was seen by medical personnel related to his eye diseases a total of approximately thirty times. (Sadeghi Decl., ¶ 16.) He was seen by Dr. Sadeghi or other medical personnel at the eye clinic at San Quentin a total of approximately twenty times during that period. (*Id*.; *see also* Payton Decl., ¶ 11 ("after the september [sic] 20, 2005 operation, I was seen at least everey [sic] ninety days by Dr. Sadeghi who examined my eye").) He was also referred to West Coast Retina Medical Group and UCSF Medical Center for evaluation and treatment. (Sadeghi Decl., Exs. C & E.)

## LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts

showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.*  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

## DISCUSSION

Plaintiff makes two claims.  First, defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment right to be free from cruel and unusual punishment.  Specifically, Dr. Sadeghi failed to properly install the intraocular lens during the September 20, 2005 surgery, did not take appropriate steps to prevent development of endophthalmitis in plaintiff's left eye after the September 20, 2005 surgery and delayed and obstructed follow-up treatment.  The remaining defendants were responsible as Dr. Sadeghi's supervisors.  Second, defendants committed medical negligence under California state law.  (Am. Compl. at 5-6.)

Defendants argue that they are entitled to summary judgment on all claims because plaintiff has failed to establish that (1) any of the defendants acted with a sufficiently culpable state of mind; (2) defendants' actions caused plaintiff's injuries; (3) any of plaintiff's medical care for his left eye was delayed or obstructed; and (4) any of the defendants bear any supervisory liability for Dr. Sadeghi's actions.  (*See generally* Novato Defs' MPA; Tilton Defs' MPA.)

*A.     Deliberate Indifference to Medical Needs*

Prisoners can establish an Eighth Amendment violation with respect to medical care if they can prove there has been deliberate indifference to their serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104

F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A determination of "deliberate indifference" involves an examination of two elements:  the seriousness of the prisoner's medical need and the nature of the defendants' response to that need.  *McGuckin*, 974 F.2d at 1059. Defendants fail to address the issue of whether plaintiff's eye problems amount to a serious medical need.  The court must construe the evidence and the inferences to be drawn therefrom in a light most favorable to the nonmoving party.  *TW Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  Furthermore, there can be little dispute that loss of vision, acute glaucoma, endophthalmitis and other eye problems that plaintiff suffered constitute a serious medical need.  Accordingly, the court will focus on the nature of the defendants' response to that need.

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id*.  If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.  *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and a resulting harm.  *See McGuckin*, 974 F.2d at 1060; *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  Such indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison officials provide medical care.  *McGuckin*, 974 F.2d at 1062.  The Supreme Court has held that,

> in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' ... [t]hus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable

claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 106.  Care received need not be "perfect, the best obtainable, or even very good."  *Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting *Brown v. Beck*, 481 F. Supp. 723, 726 (S.D. Ga. 1980)).

### 1. **Defendant Sadeghi**

The court finds that plaintiff's Eighth Amendment claim as to Dr. Sadeghi is not supported by any evidence.  First, plaintiff provides no admissible evidence in support of his claim that the lens was improperly installed by Dr. Sadeghi during the September 20, 2005 surgery as opposed to being misplaced during many other eye procedures performed by various doctors following the September 2005 surgery.  The statement by unidentified physician at UCSF Medical Center to which plaintiff refers in his declaration is hearsay, and the court cannot rely on it for the purposes of ruling on the motion for summary judgment.  *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002) (a district court can only consider admissible evidence in ruling on a motion for summary judgment).  While the records from UCSF Medical Center refer to the misplaced lens in April 2007, they do not establish when the lens was misplaced or what caused the misplacement.

Likewise, plaintiff's claim that Dr. Sadeghi did not take appropriate steps to prevent development of endophthalmitis in plaintiff's left eye after the September 20, 2005 surgery is not supported by any evidence.  Plaintiff claims that he asked Dr. Sadeghi for something to cover his left eye with following the surgery, and Dr. Sadeghi stated that it was not necessary.  Dr. Sadeghi provided evidence that covering the eye after cataract surgery does not prevent infection.  (Sadeghi Decl., ¶ 8.)  There is no evidence in the record Dr. Sadeghi's follow-up treatment after the surgery caused the infection.  To the contrary, Dr. Sadeghi has submitted evidence that such an infection is one of the risks of cataract surgery.  (*Id.*, ¶ 21.)

Finally, plaintiff failed to provide any evidence that Dr. Sadeghi delayed and

obstructed follow-up treatment for plaintiff's eye problems. To the contrary, the record shows that Dr. Sadeghi diagnosed plaintiff's eye conditions as they arose, monitored his status with follow-up treatments, performed many corrective procedures, prescribed various medication and eye drops for the left eye, adjusted medication as necessary, and referred plaintiff to other eye specialists at West Coast Retina Medical Group or UCSF Medical Center. When plaintiff first exhibited the symptoms of endophthalmitis infection, Dr. Sadeghi came to examine plaintiff at the emergency room of Novato Community Hospital, agreed with the emergency department physician's diagnosis and treatment and scheduled a follow-up appointment for plaintiff to see him the following day. Dr. Sadeghi evaluated plaintiff again at the San Quentin eye clinic the following day, and scheduled the same day appointment with West Coast Retina Medical Group specialist. The doctors at West Coast Retina Medical Group performed additional tests, confirmed the diagnosis of endophthalmitis and aggressively treated it. Plaintiff's complaints and symptoms were neither neglected nor ignored by Dr. Sadeghi. Rather than showing deliberate indifference, the evidence in the record indicates that plaintiff's medical needs were taken care of in a timely and adequate manner.

Furthermore, even if Dr. Sadeghi failed to properly install the lens during the September 20, 2005 surgery and should have had the eye covered following the surgery, such claims do not amount to deliberate indifference. At most, such claims constitute medical negligence which is not actionable under the Eighth Amendment. *McGuckin*, 974 F.2d at 1059 (mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights). Plaintiff's own declaration reveals that Dr. Sadeghi was not *deliberately* indifferent to plaintiff's serious medical needs: "[O]n April 26, 2006, I was seen by Dr. Sadeghi on a routine check up basis and I asked him if he was aware during the years after he did the operation and during the time I was complaining about the eye pain and other problems if he knew the lense [sic] was lose [sic] and he stated that he did not know." (Payton Decl., ¶ 8.) This statement shows that even if the lens was improperly installed, Dr. Sadeghi did not know

that plaintiff faced a substantial risk of serious harm, nor did he disregard such a risk by failing to take reasonable measures to abate it. *See Farmer*, 511 U.S. at 837; *compare Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) (summary judgment reversed where medical staff and doctor knew of head injury, disregarded evidence of complications to which they had been specifically alerted and without examination, prescribed contraindicated sedatives). Accordingly, the court GRANTS summary judgment as to Dr. Sadeghi on the Eighth Amendment claim.

### 2. Defendants Novato Community Hospital, Director of Novato Community Hospital, Tilton, Ayers and Grannis

With respect to defendants Novato Community Hospital, Director of Novato Community Hospital, Tilton, Ayers and Grannis, plaintiff claims they were liable as supervisors of Dr. Sadeghi. (*See* Pl's Opp. at 6-7 (docket no. 36); Am. Compl. at 6-7.)

A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (*en banc*) (citation omitted). A supervisor, therefore, generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Because the court finds that Dr. Sadeghi did not violate plaintiff's constitutional rights, the court grants summary judgment as to defendants Novato Community Hospital, Director of Novato Community Hospital, Tilton, Ayers and Grannis on the Eighth Amendment claim.[4]

### 3. Defendant Saylor

The only remaining defendant in this action is defendant K. Saylor, former Chief

---

[4] Having determined that defendants are entitled to summary judgment on this claim, the court need not address the balance of defendants' arguments as to the claim.

1  Medical Officer at San Quentin.  Defendant Saylor acknowledged service of summons on
2  March 15, 2008.  (Docket No. 48.)  However, to date, she has not filed a dispositive
3  motion or a notice that she is of the opinion that this case cannot be resolved by summary
4  judgment.

5  The only allegations as to Saylor are based on her role as the supervisor of Dr.
6  Sadeghi.  (Am. Compl. at 6.)  Because the court finds that Dr. Sadeghi did not violate
7  plaintiff's constitutional rights, and in light of the court's ruling with respect to
8  defendants Novato Community Hospital, Director of Novato Community Hospital,
9  Tilton, Ayers and Grannis, the court grants summary judgment as to defendant Saylor on
10 the Eighth Amendment claim.

11 **B.     *Medical Negligence***

12 Plaintiff also asserts a claim for professional negligence, also referred to as
13 medical malpractice, under California Law.  "When federal claims are dismissed before
14 trial, the question whether pendent state claims should still be entertained is within the
15 sound discretion of the district court."  *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th
16 Cir.1985) (per curiam).  Generally, dismissal of federal claims before trial counsels that
17 the pendent state claims should also be dismissed.  *Id*.  Because the court dismisses
18 plaintiff's federal claim against defendants Sadeghi, Novato Community Hospital,
19 Director of Novato Community Hospital, Tilton, Ayers, Grannis, and Saylor, the court
20 will dismiss pendent state claim of medical negligence against them without prejudice to
21 being refiled in state court.

## CONCLUSION

23 The motions for summary judgment by the Novato Defendants and the Tilton
24 Defendants (docket nos. 30 and 38) are GRANTED.  Plaintiff's Eighth Amendment claim
25 as to all defendants is DISMISSED with prejudice.  Plaintiff's claim for professional
26 negligence under California law against all defendants is DISMISSED without prejudice.
27 ///
28 ///

1     IT IS SO ORDERED.

2 DATED: \_\_\_8/5/09_____

/s/ Ronald M. Whyte

RONALD M. WHYTE
United States District Judge